**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| DALLAS FAULKNER, On Behalf of Himself and All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>RALCORP HOLDINGS, INC., WILLIAM P. STIRITZ, J. PATRICK MULCAHY, DAVID R. BANKS, DAVID W. KEMPER, JACK W. GOODALL, DAVID P. SKARIE, KEVIN J. HUNT, JONATHAN E. BAUM, BILL G. ARMSTRONG, DAVID R. WENZEL, BENJAMIN OLA. AKANDE, KEITH A. MEISTER, CONAGRA FOODS, INC., and PHOENIX ACQUISITION SUB INC.,<br><br>              Defendants. | **Case No.**<br><br>**COMPLAINT FOR INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND CLASS ACTION CLAIMS FOR BREACH OF FIDUCIARY DUTY**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dallas Faulkner ("Plaintiff"), by his attorneys, for his individual and class action complaint against defendants, alleges upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge, as follows:

1.      This is both an individual action and a class action brought by Plaintiff on behalf of the holders of Ralcorp Holdings, Inc. ("Ralcorp" or the "Company") common stock to enjoin the proposed acquisition of the publicly-owned shares of Ralcorp's common stock by ConAgra Foods, Inc. ("ConAgra") through its wholly-owned subsidiary, Phoenix Acquisition Sub Inc. (Merger Sub), as detailed herein (the "Proposed Transaction").

2.      On November 27, 2012, Ralcorp and ConAgra issued a joint press release announcing that the Company had entered into a definitive Agreement and Plan of Merger, dated November 26, 2012 ("Merger Agreement") pursuant to which ConAgra, through Merger Sub,

will acquire all of the outstanding stock of Ralcorp, in a transaction valued at approximately $6.8 billion, including the assumption of Ralcorp's outstanding debt.  The Proposed Transaction is expected to close during the first quarter of 2013. Under the terms of the Agreement, stockholders will receive $90.00 cash per share for all outstanding shares of the Company's common stock.

3.      On December 12, 2012, Ralcorp filed its preliminary Schedule 14A with the Securities and Exchange Commission ("SEC"), which schedules a special shareholder meeting for early 2013 ("Preliminary Proxy") at which time shareholders will be asked to vote on the Proposed Transaction.  However, the Preliminary Proxy is replete with material omissions and misstatements.

4.      Since this information is material to Ralcorp's public shareholders' upcoming voting decision, Defendants' (defined below) conduct constitutes violations of Sections14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act").  Additionally, the Individual Defendants' conduct constitutes a breach of their fiduciary duties owed to Ralcorp's shareholders and a violation of applicable legal standards governing the Individual Defendants' conduct.

5.      As described more fully herein, both the value to Ralcorp shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company.  The Individual Defendants' (defined herein) conduct constitutes a breach of their fiduciary duties owed to Ralcorp's shareholders, and a violation of applicable legal standards governing the Individual Defendants' conduct.

6.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction due to the Individual Defendants' violations of Sections 14(a) and 20(a), as well as their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure..

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1331 for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder.  Each of the defendants conducts business in, and/or maintains operations in this District, or in the case of the individuals, has sufficient minimum contacts for this Court to exercise jurisdiction.  For example, the Individual Defendants attended meetings and approved the document at issue in this litigation in this District.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Ralcorp is incorporated in Missouri and is therefore a resident of this District, as are many of the Individual Defendants, who are officers and/or directors of Ralcorp and reside or work in this District.

## PARTIES

9.     Plaintiff Dallas Faulkner is and has been at all relevant times the owner of the common stock of the Company.

10.     Defendant Ralcorp is a Missouri corporation with its principal headquarters at 800 Market Street, Suite 2900, St. Louis, MO 63101.  Ralcorp produces a variety of private-brand foods sold under the individual labels of various grocery, mass merchandise and drugstore retailers, and frozen bakery products sold to in-store bakeries, restaurants and other foodservice customers. Ralcorp's product mix includes: ready-to-eat and hot cereals; nutritional and cereal

bars; snack mixes, corn-based chips and extruded corn snack products; crackers and cookies; snack nuts; chocolate candy; salad dressings; mayonnaise; peanut butter; jams and jellies; syrups; sauces; frozen griddle products including pancakes, waffles, and French toast; frozen biscuits and other frozen pre-baked products such as breads and muffins; frozen and refrigerated doughs; dry pasta; and frozen pasta meals.  Shares of Ralcorp stock trade on the NYSE under the ticker symbol "RAH."

11.     Defendant William P. Stiritz ("Stiritz") has been a director of the Company since 1994.  Stititz also served on the board of directors for Energizer Holdings, Inc. ("Energizer") until 2008.

12.     Defendant J. Patrick Mulcahy ("Mulcahy") has been a director of the Company since 2007 and currently serves as Chairman of the Board.  Mulcahy serves on the board of directors for Energizer Holdings, Inc. ("Energizer"), where he served alongside Stiritz.

13.     Defendant David R. Banks ("Banks") has served as a director of the Company since 2001.

14.     Defendant David W. Kemper ("Kemper") has been a director of the Company since 1994.

15.     Defendant Jack W. Goodall ("Goodall") has been a director of the Company 1994.

16.     Defendant David P. Skarie ("Skarie") has been a director of the Company since 2004.  Skarie served as Co-Chief Executive Officer ("CEO") and President of Ralcorp from 2003 through 2011.

17.    Defendant Kevin J. Hunt ("Hunt") has been a director of the Company since 2004.  Hunt was appointed CEO and President of Ralcorp on January 1, 2012.  Hunt previously served as Co-CEO and President alongside Skarie.

18.    Defendant Jonathan E. Baum ("Baum") has been a director of the Company since 2010.

19.    Defendant Bill G. Armstrong ("Armstrong") has been a director of the Company since 2004.  Armstrong also serves on the board of directors for Energizer alongside Mulcahy and formerly alongside Stiritz.

20.    Defendant David R. Wenzel ("Wenzel") has been a director of the Company since 2007.

21.    Defendant Benjamin Ola. Akande ("Akande") has been a director of the Company since 2010.

22.    Defendant Keith A. Meister ("Meister") has been a director of the Company since October 2012.

23.    The defendants identified in ¶¶11-22 are referred to herein as the "Individual Defendants."

24.    Defendant ConAgra is one of North America's leading food companies, with brands in 97 percent of America's households.  Consumers find Banquet®, Chef Boyardee®, Egg Beaters®, Healthy Choice®, Hebrew National®, Hunt's®, Marie Callender's®, Orville Redenbacher's®, PAM®, Peter Pan®, Reddi-wip®, Slim Jim®, Snack Pack® and many other ConAgra Foods brands in grocery, convenience, mass merchandise and club stores.  ConAgra Foods also supplies frozen potato and sweet potato products as well as other vegetable, spice and

grain products to a variety of well-known restaurants, foodservice operators and commercial customers.

25.     Defendant Merger Sub is a wholly owned subsidiary of ConAgra.

26.     Defendants ConAgra and Merger Sub, Inc. are collectively referred to herein as "ConAgra".

27.     Ralcorp, ConAgra and the Individual Defendants are referred to herein as "Defendants".

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings Counts III and IV of this action on his own behalf and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all stockholders of the Company (except the defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants) and their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

29.     This action is properly maintainable as a class action.

30.     The Class is so numerous that joinder of all members is impracticable.  As of December 6, 2012 the Company had 55,177,623 shares of common stock outstanding, likely owned by thousands of shareholders located throughout the country.

31.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:

(a)     whether Defendants have failed to disclose material information to Ralcorp's common stockholders in breach of their common and/or state law duties of disclosure;

(b)     whether the Individual Defendants have breached their fiduciary duties of due care, good faith, and loyalty with respect to Plaintiff and the other members of the Class in connection with the conduct alleged herein;

(c)     whether the process implemented and set forth by the Individual Defendants in connection with the Proposed Transaction was fair to the members of the Class;

(d)     whether Ralcorp and ConAgra aided and abetted the Individual Defendants' breaches of their fiduciary duties; and

(e)     whether the Class is entitled to injunctive relief or damages as a result of the wrongful conduct committed by defendants.

32.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of the Plaintiff are typical of the claims of other members of the Class as set forth in Rule 23 and Plaintiff has the same interests as the other members the Class.  Plaintiff will fairly and adequately represent the Class.

33.     Plaintiff envisions no unusual difficulty in the management of this action.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

35.     Defendants have acted in a manner which affects Plaintiff and all members of the Class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

36.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of Ralcorp and owe Plaintiff and the other members of the Class the duties of good faith, fair dealing, loyalty and full and candid disclosure.

37.     By virtue of their positions as directors and/or officers of Ralcorp, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Ralcorp to engage in the practices complained of herein.

38.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company and with such care as would be expected of an ordinarily prudent person.

39.     The Individual Defendants are also obliged to honor their duty of candor to Ralcorp shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote or tender their shares.  This duty of candor ensures that shareholders have all information that will enable them to make informed, rational and intelligent decisions about whether to relinquish their shares in exchange for the consideration offered.

40.     Plaintiff alleges herein that Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, independence and candor owed to Plaintiff and other public shareholders of Ralcorp.  Certain of the Individual Defendants are obtaining for

themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class.

## SUBSTANTIVE ALLEGATIONS

### Background

41.     Ralcorp produces a variety of private-brand foods sold under the individual labels of various grocery, mass merchandise and drugstore retailers, and frozen bakery products sold to in-store bakeries, restaurants and other foodservice customers. Ralcorp's product mix includes: ready-to-eat and hot cereals; nutritional and cereal bars; snack mixes, corn-based chips and extruded corn snack products; crackers and cookies; snack nuts; chocolate candy; salad dressings; mayonnaise; peanut butter; jams and jellies; syrups; sauces; frozen griddle products including pancakes, waffles, and French toast; frozen biscuits and other frozen pre-baked products such as breads and muffins; frozen and refrigerated dough; dry pasta; and frozen pasta meals.

### A 20-Month Standoff

42.     On May 4, 2011, ConAgra issued a press release announcing that it had made a proposal to Ralcorp's Board to acquire Ralcorp for $86 per share in cash, or approximately $4.9 billion, including the assumption of $2.5 billion in debt.  The press release further announced that ConAgra sent an initial letter of interest to the Ralcorp Board on March 22, 2011, which proposed $82 per Ralcorp share, in a combination of cash and ConAgra stock.  The press release also included a copy of the proposal letter, sent from ConAgra's CEO Gary M. Rodkin to Stiritz. The letter further revealed that ConAgra had been trying to discuss a potential strategic combination with Ralcorp since February of 2011, as follows:

Dear Bill:

As you know, we have been trying since our February 23, 2011 call to you to arrange a meeting and discussion of a potential combination between Ralcorp and ConAgra Foods. After Ralcorp's unwillingness to discuss the subject, we sent you a written proposal on March 22, 2011, when Ralcorp's stock was trading at $65.31 per share (closing price on March 21, the business day prior to our letter). You rejected our proposal in a phone call on April 1 and also sent us a rejection letter on May 1, immediately prior to your press release on the matter, which we assume was intended to be a written confirmation of your initial verbal rejection.

Though our Board of Directors is disappointed by your response and your refusal to meet with us or to discuss this opportunity, we have reaffirmed our strong belief in the strategic, operational and financial merits of the proposed transaction. After careful consideration with our Board, we are submitting this revised all-cash proposal which we are confident will be very well-received by all of your constituents and, given the substantial value we are offering, will be embraced by your shareholders.

While our goal has always been to engage in a private discussion with you, we continue to recognize the importance of a collaborative process, and we are therefore increasing our offer to $86.00 per share in cash.

* * *

Though our offer is 100% cash, we remain open to offering a portion of the consideration in ConAgra Foods' stock should you wish to provide the opportunity for your shareholders to share in the upside potential of the combined company. We believe Ralcorp shareholders (including those representing as much as 60% of Ralcorp shares that already own ConAgra Foods stock) would appreciate the strategic and financial logic of the combination and the opportunity to participate in its future.

43.    While Ralcorp received the initial proposal in March 2011, it was not until May 1, 2011 that Ralcorp's Board, in a press release regarding Ralcorp's unusual market activity, revealed that it had received the unsolicited proposal. The Board determined not to pursue that proposal. The press release further explained that Ralcorp's Board was committed to executing the Company's strategic plan. On May 4, 2011, Ralcorp's Board responded to the second proposal, reiterating its intent to executing the strategic plan and remaining an independent company.

44.     Also on May 4, 2011, Ralcorp announced that its Board had adopted a shareholder rights plan in order to reduce the likelihood that any person or group would gain control of the company by open market accumulation or otherwise without paying a control premium for all shares.  The shareholder rights plan, generally known as a "Poison Pill", would be triggered upon the acquisition of 10% or more of the Company's outstanding common stock. If a potential acquirer were to reach the 10% threshold, all holders of the Company's common stock, except for the potential acquirer that reached the 10% threshold, would be entitled to purchase shares of stock at a reduced rate, thus making it nearly impossible for the potential acquirer to stage a takeover; and indeed, making the stock less attractive to a potential acquirer.

45.     Two months later, on July 14, 2011, Ralcorp announced its intention to split Ralcorp and its Post Foods cereal unit.  Defendant Mulcahy became Chairman of Ralcorp's Board following the split and Stiritz was named CEO of Post Foods shortly thereafter.

46.     On August 14, 2011, ConAgra revealed that on August 11, 2011, it sent another proposal to Ralcorp, on that occasion offering $94 per share in cash.  ConAgra additionally sought private discussions to further discuss a potential combination.  Ralcorp rejected the offer almost immediately and refused to engage in discussions with ConAgra.

47.     On September 13, ConAgra reiterated its $94 proposal, as follows:

OMAHA, Neb., September 13, 2011 (BUSINESS WIRE) – ConAgra Foods today reiterated its $94 per share, all-cash proposal to acquire Ralcorp Holdings, Inc. (NYSE: RAH).  Ralcorp previously rejected this proposal, without dialogue with ConAgra Foods, on August 12, 2011.

Since August 12, ConAgra Foods has heard from many of Ralcorp's shareholders who are urging Ralcorp to enter into negotiations with ConAgra Foods based on the strength of ConAgra Foods' compelling $94 per share all-cash proposal.  However, Ralcorp has continued to refuse ConAgra Foods' attempts to engage privately and hold a constructive discussion regarding the strong value, strategic logic and certainty of its proposal.

As part of ConAgra Foods' recent attempt to enter into discussions with Ralcorp, ConAgra Foods sent a presentation to Ralcorp's Board of Directors, emphasizing the superior value and certainty of ConAgra Foods' proposal. Despite repeated attempts by ConAgra Foods since its initial letter was sent to Ralcorp on March 22, 2011, Ralcorp has been unwilling to engage in discussions of any nature with ConAgra Foods. Ralcorp's Board has reiterated that it is singularly focused on pursing a separation of its businesses as announced on July 14, 2011.

ConAgra Foods again requests that Ralcorp enter into a constructive dialogue around the terms and conditions of ConAgra Foods' all-cash proposal for the entire business. If ConAgra Foods and Ralcorp are not engaged in a constructive dialogue satisfactory to ConAgra Foods by 5:00pm Eastern time on September 19, 2011, ConAgra Foods will withdraw its proposal.

48.     ConAgra withdrew its $94 bid shortly after Ralcorp rejected the proposal.  One article released by *Bloomberg* suggested that a ConAgra proposal could have reached as high as $104 per share if the companies  engaged in discussions about a potential combination.

49.     On August 23, 2012, Ralcorp filed a Schedule 13D with the SEC on behalf of Corvex Management LP ("Corvex"), which reported that Corvex, run by Defendant Meister "may be deemed to be the beneficial owner of 1,121,048 Shares and 1,714,248 Shares underlying the call options referenced in Item 6, which collectively represent approximately 5.13% of the Issuer's outstanding Shares. Corvex may be deemed to have sole power to vote and sole power to dispose of such Shares. By virtue of his position as control person of the general partner of Corvex, Mr. Meister may be considered to beneficially own such Shares."

50.     On October 3, 2012, Ralcorp entered into an agreement with Corvex and Meister.  Pursuant to the agreement, the size of Ralcorp's existing Board was increased from nine to ten members, with Meister being appointed to the Board to fill the resulting vacancy.  As part of the agreement, Corvex, Meister and Ralcorp agreed that "so long as Mr. Meister is a director, the Corvex Group will vote in favor of Ralcorp's slate of director nominees, will not support or participate in any 'withhold the vote' or similar campaign, and will not present any

proposals for consideration, or conduct any proxy solicitations for use, at any meeting of Ralcorp's shareholders.

51.     According to a *Bloomberg* article, Meister began talks with Ralcorp regarding a potential combination in mid-September and ConAgra decided to restart talks with Ralcorp after Meister was added to the Board.

**The Proposed Transaction**

52.     Ultimately, Ralcorp and its Board reversed course, after previously rejecting a higher offer from ConAgra.  On November 27, 2012, Ralcorp and ConAgra issued a joint press release which stated in relevant part:

> OMAHA, Neb. & ST. LOUIS, Mo.--ConAgra Foods, Inc. (NYSE: CAG) and Ralcorp Holdings, Inc. (NYSE: RAH) today announced that the boards of directors of both companies have unanimously approved a definitive agreement under which ConAgra Foods will acquire Ralcorp, the largest manufacturer of private label food in the U.S. Under the terms of the agreement, Ralcorp shareholders will receive $90.00 per share in cash for each outstanding share of common stock held, representing a 28.2% premium to the closing price of Ralcorp's common stock on November 26, 2012, and a 24.9% premium to the average closing price of Ralcorp's common stock for the 30 trading days ending November 26, 2012. The transaction is valued at approximately $6.8 billion, including the assumption of debt.
>
> This transaction creates one of the largest packaged food companies in North America, with sales of approximately $18 billion annually and more than 36,000 employees. It will also position ConAgra Foods as the largest private label packaged food business in North America, with combined private label sales of approximately $4.5 billion.
>
> Gary Rodkin, chief executive officer of ConAgra Foods said, "We are very pleased to have reached an agreement with Ralcorp after a period of collaborative dialogue between the two companies. Ralcorp is already the largest private label food company in the U.S. and is well positioned for future growth. The acquisition of Ralcorp is a logical and exciting step for ConAgra Foods. Adding Ralcorp provides us with a much larger presence in the attractive and growing private label segment and accelerates our Recipe for Growth strategy. The transaction will allow us to apply our scale and combined operational expertise to this important growth area, and will strengthen our position as one of the leading food companies in North America. We believe the balanced combination of our

very significant branded food business, the largest private label food business in North America, and our important commercial food businesses, will enable ConAgra Foods to deliver even greater value and innovation to our customers and consumers, and sustainable profitable growth to our shareholders. We look forward to working with Ralcorp's experienced and talented team to capitalize on opportunities and create value for shareholders, and to welcoming Ralcorp's employees to the ConAgra Foods family."

Kevin J. Hunt, chief executive officer and president of Ralcorp, said, "We are proud of Ralcorp's track record of shareholder value creation and view this transaction as the culmination of those efforts. This combination delivers immediate and compelling cash value to our shareholders and benefits to our customers and employees. We believe the two companies are a great fit, and our employees will benefit as part of a larger diversified organization with the necessary scale and resources to be a leader in today's rapidly evolving marketplace. On behalf of the Ralcorp Board and management team, we thank our dedicated employees for their continued hard work, which has enabled us to grow Ralcorp to a position of strength with our many private label offerings across both retail and commercial channels. We look forward to joining with ConAgra Foods to complete this exciting transaction and capitalize on our future growth opportunities."

**Strong Strategic Rationale**

The acquisition of Ralcorp adds to ConAgra Foods' existing private label business of approximately $950 million to create the largest private label packaged food business in North America, with approximately $4.5 billion in combined annual private label sales. Ralcorp fits well with ConAgra Foods' Recipe for Growth strategy, set 18 months ago, which includes expansion in the private label segment, growth in its core business and adjacencies, and expansion internationally. According to industry analysts, private label now represents 18% of sales in the packaged food market in the U.S. and has consistently demonstrated growth in excess of the overall food market over time. ConAgra Foods' combination with Ralcorp creates an enhanced platform that will allow ConAgra Foods to capitalize on, and contribute to, that compelling long-term growth trend while generating significant efficiencies.

Ralcorp has strengthened its leadership position in private label through recent strategic acquisitions and enhanced customer relationships. The two companies' portfolios are a complementary fit, with very little overlap in terms of offerings. Ralcorp's leading private label offerings include cereal, pasta, crackers, jellies and jams, syrups, frozen waffles, and more. Ralcorp's total annual sales of approximately $4.3 billion also include a branded and commercial / foodservice portfolio.

53.     The release added that ConAgra Foods and Ralcorp will establish a transition team comprised of members of both management teams to prepare for, and to oversee, the integration of the businesses.

54.     It disclosed further that Centerview Partners and BofA Merrill Lynch are serving as financial advisors to ConAgra Foods with Davis Polk & Wardwell LLP  serving as its legal advisor, while Barclays and Goldman, Sachs & Co. (the "Financial Advisors") are serving as Ralcorp's financial advisors and Wachtell, Lipton, Rosen & Katz is serving as its legal advisor.

55.     The consideration offered to Ralcorp's public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Ralcorp's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings. Additionally, in 2011, Ralcorp's Board announced, and reiterated, their intention to continue as an independent company, refusing to engage in discussions that could have led to an offer as $104 per share.

56.     Furthermore, while shareholders will not receive fair consideration for their shares of Ralcorp common stock, certain Ralcorp directors stand to gain considerably as a result of the Proposed Transaction.  Indeed, the following table demonstrates that Hunt and Skarie will receive considerable benefits, separate from any accrued but unpaid salaries, as follows:

| Name | Cash (Salary and Bonus) ($)[1] | Value of Stock Awards ($)[4] | Health Benefits [2] | | | Insurance [3] | | | Outplacement Assistance ($) | Excise Tax and Gross-Up ($) | Total ($) |
| | | | Medical ($) | Dental ($) | Vision ($) | Group Life Insurance ($) | Long-Term Disability ($) | Voluntary Personal Accident ($) | | | |
| K.J. Hunt | 3,891,000 | 10,917,750 | 34,563 | 2,244 | — | 12,733 | 1,818 | 792 | 20,000 | 4,429,210 | 19,310,109 |
| D.P. Skarie | 3,891,000 | 9,527,381 | 36,716 | 2,244 | — | 4,435 | 1,818 | 243 | 20,000 | 4,318,374 | 17,802,211 |

Ralcorp shareholders will not be able share in these exorbitant gains to be received by Hunt and Skarie.

57. Moreover, while Ralcorp was content to ignore a superior offer from ConAgra one year earlier without ever engaging in substantive discussions, Ralcorp's Board agreed to the Proposed Transaction without ever seeking alternative offers, canvassing the market or performing any kind of market check to ensure the fairness of the Proposed Transaction.

**The Preclusive Deal Protection Devices**

58. To the detriment of Ralcorp shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

59. The Merger Agreement includes a restrictive "No Solicitation" provision under Section 6.03, which prohibits the Company and any of its representatives from initiating, soliciting or knowingly encouraging any inquiries that constitute an acquisition proposal. It further requires the Company and any of its representatives to immediately cease all discussions or negotiations with any person with respect to any acquisition proposal. This provision effectively forecloses the possibility that the Company would receive a superior bid.

60. The Merger Agreement additionally provides that in the unlikely event that Ralcorp receives an acquisition proposal, the Company must provide the bidder notification of the proposal as follows:

> *Required Notices.* The Company shall notify Parent promptly (but in no event later than 24 hours) after receipt by the Company (or any of its Representatives) of each Acquisition Proposal or any *bona fide* indication that a Third Party intends to make an Acquisition Proposal, or any request for information relating to the Company or any of its Subsidiaries or for access to the business, properties, assets, books or records of the Company or any of its Subsidiaries by any Third Party that has made or has indicated that it intends to make an Acquisition Proposal. The Company shall provide such notice orally and in writing and shall identify the Third Party making, and the material terms and conditions of, any such Acquisition Proposal, indication or request. The Company shall keep Parent

informed, on a reasonably current basis, of the status of, and any material changes to, any such Acquisition Proposal, indication or request, and shall promptly (but in no event later than 24 hours after receipt) provide to Parent copies of all correspondence and written materials sent or provided to the Company or any of its Subsidiaries that describes any material terms or conditions of any Acquisition Proposal. Any material amendment to any Acquisition Proposal will be deemed to be a new Acquisition Proposal for purposes of the Company's compliance with this Section 6.03(c).

61.     Section 6.03(d) of the Merger Agreement requires that before the Board makes any recommendation change, it must provide ConAgra with an opportunity to revise its offer as follows:

> "*Last Look*".  Further, the Board of Directors of the Company shall not make an Adverse Recommendation Change pursuant to Section 6.03(b)(ii) (or terminate this Agreement pursuant to Section 10.01(d)(i)), unless (i) the Company promptly provides written notice to Parent, in writing at least three Business Days before taking that action, of its intention to do so, attaching (A) in the case of an Adverse Recommendation Change to be made following receipt of a Superior Proposal, the most current version of the proposed agreement under which such Superior Proposal is proposed to be consummated and the identity of the third party making the Acquisition Proposal or (B) in the case of any Adverse Recommendation Change to be made pursuant to Section 6.03(b)(ii)(B), a reasonably detailed description of the reasons for making such Adverse Recommendation Change, and (ii) Parent does not make, within three Business Days after its receipt of that written notification, an offer that (A) in the case of any Adverse Recommendation Change to be made following receipt of a Superior Proposal, is at least as favorable to the shareholders of the Company as such Superior Proposal (it being understood and agreed that any amendment to the financial terms or other material amendment of such Superior Proposal shall require a new written notification from the Company and a new three Business Day period under this Section 6.03(d)) or (B) in the case of any Adverse Recommendation Change to be made pursuant to Section 6.03(b)(ii)(B), obviates the need for such Adverse Recommendation Change.  The Company agrees that, during any applicable three Business Day period referred to in this Section 6.03(d), the Company shall negotiate in good faith with Parent regarding any revisions to the terms of this Agreement proposed by Parent.

62.     The Merger Agreement also provides for a "Termination Fee" of $180,000,000 to be paid in cash if the Merger Agreement is terminated by the Company or by ConAgra, including in the event that Company decides to pursue a superior offer.  The Termination Fee

essentially requires that an alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.  It is thus unlikely that any such superior offer would emerge.

63.     Ultimately, these preclusive deal protection devices impede the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**The Materially False and Misleading Preliminary Proxy**

64.     On December 12, 2012, Defendants filed the Preliminary Proxy, which Plaintiff alleges contains materially false and misleading information.   The Preliminary Proxy is materially incomplete and misleading in the following respects:

(a)     The Preliminary Proxy fails to disclose the ratios and multiples observed by the Financial Advisors for each of the companies in its *Selected Companies Analysis*.  The Financial Advisors selected and applied a reference range consisting of the observed 2013E P/E range but did not apply the observed EV/2012E EBITDA range and provided no explanation for the reason for omitting the analysis.  This omitted information is material, as there is a "black box" of information available to Ralcorp stockholders, who were not told why the range of observed EV/2012E EBITDA were not applied;

(b)     The *Present Value of Future Stock Price Analysis* performed by the Financial Advisors fails to disclose the rationale and/or key inputs and assumptions relied upon

by the Financial Advisors.  For example, the Preliminary Proxy fails to disclose the basis for the selection of next twelve month P/E multiples ranging from 16.5x to 18.5x which were applied to Ralcorp's estimated earnings per share ("EPS").  Without this information, Ralcorp shareholders cannot properly assess the credibility of the analysis;

(c)     The Preliminary Proxy fails to disclose, in the Financial Advisors' *Illustrative Discounted Cash Flow Analysis* ("DCF"), the inputs and assumptions that were used to determine the discount rate range of 6.5% to 7.5% and the basis for selecting a terminal EBITDA multiple range of 8.5x to 10.0x.  The DCF further fails to disclose how, if at all, the Company's net operating losses ("NOLs") were accounted for in the analysis or how stock based compensation was treated in the DCF.  Absent these critical inputs, Ralcorp shareholders will be unable to determine whether the DCF is reliable;

(d)     The Preliminary Proxy fails to disclose the ratios and multiples observed by the Financial Advisors for each of the companies in its *Selected Precedent Transactions Analysis*.  Without this information, Ralcorp shareholders will be unable to determine is the analysis is reliable;

(e)     The Preliminary Proxy indicates that while the Financial Advisors were separately retained, the Financial Advisors rendered a joint opinion, but the Preliminary Proxy fails to disclose why two advisors were necessary, and why a joint fairness opinion was issued;

(f)     The Preliminary Proxy discloses that Barclays fairness opinion was approved by its internal Valuation and Fairness Opinion committee but the Preliminary Proxy fails to disclose what, if any changes, were made between Barclays internal presentation and the ultimate fairness presentation that was issued; and

(g)     The Preliminary Proxy fails to disclose the nature of the future services to be rendered to ConAgra by the Financial Advisors, and the amount of fees that such services will be garnered by them.

65.     Furthermore, in the section titled *Unaudited Financial Forecasts*, the Preliminary Proxy discloses certain financial projections provided by Ralcorp management which were relied upon by the Financial Advisors for the purpose of providing their fairness opinion.  The forecast, disclosed on page 42 of the Preliminary Proxy, however, fails to disclose a number of essential metrics, including the projected capital expenditures, working capital, stock-based compensation and, most importantly, free cash flows, for the years 2013 through 2017.  These are essential inputs, without which Ralcorp shareholders will be unable to properly determine whether to accept the Proposed Transaction, and give up future income, or vote against the Proposed Transaction.

66.     Moreover, while the Preliminary Proxy refers to two sets of management forecasts provided to the Financial Advisors by Ralcorp's Board, it fails to disclose "base case" financial forecasts.  The Preliminary Proxy similarly provides no rationale for the omission of the base case forecasts.

67.     Additionally, the Preliminary Proxy fails to disclose any reasoning for why Ralcorp never performed any market check to ensure that its shareholders received the maximum consideration for their shares of Ralcorp common stock.

68.     Absent this material information, Plaintiff and other Ralcorp shareholders will not have all the necessary information to make a decision whether to vote their shares in favor of the Proposed Transaction.  Accordingly, Plaintiff seeks injunctive and other equitable relief to

prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

**On Behalf of Plaintiff  for Violations of Section
14(a) of the Exchange Act
(Against the Company and the Individual Defendants)**

69.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Defendants have issued the Preliminary Proxy with the intention of soliciting shareholder support for the Proposed Transaction.

72.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

73.     Specifically, the Preliminary Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above in paragraphs 64 to 67.  Moreover, in the exercise of reasonable care, Defendants should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

74.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

75.     Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

76.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of Ralcorp within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Ralcorp, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Preliminary Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

79.     Each of the Individual Defendants were provided with, or had unlimited access to, copies of the Preliminary Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Preliminary Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger.  They were, thus, directly involved in the making of this document.

22

81.     In addition, as the Preliminary Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Preliminary Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

84.     Plaintiff has no adequate remedy at law.

## <u>COUNT III</u>

**On Behalf of Plaintiff and the Class for Breach of Fiduciary Duties**
**<u>Against the Individual Defendants</u>**

85.     Plaintiff repeats and realleges each and every allegation set forth herein.

86.     The Individual Defendants have violated their fiduciary duties owed to the public shareholders of Ralcorp and have acted to put their personal interests ahead of the interests of Ralcorp shareholders or acquiesced in those actions by fellow defendants.   The Individual Defendants have failed to take adequate measures to ensure that the interests of Ralcorp's shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides ConAgra with an unfair advantage by effectively excluding other alternative proposals.

87.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Ralcorp investment.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

88.     The Individual Defendants have breached their duties of loyalty, entire fairness, good faith, and care by not taking adequate measures to ensure that the interests of Ralcorp's public shareholders are properly protected from.

89.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction.

90.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

91.     As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of Ralcorp's stock, and will be prevented from obtaining a fair price for their common stock.

92.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders.

93.     The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

94.     Plaintiff and the Class have no adequate remedy at law.

### COUNT IV

**On Behalf of Plaintiff and the Class for Aiding and
Abetting the Individual Defendants' Breaches of Fiduciary Duty
Against Ralcorp and ConAgra**

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     Ralcorp and ConAgra have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Ralcorp's public shareholders, and have participated in such breaches of fiduciary duties.

97.     Ralcorp and ConAgra knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Ralcorp and ConAgra rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

98.     Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against defendants as follows:

A.      Declaring this action to be a proper class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

Determining that Defendants have violated Sections 14(a) and 20(a) of the Exchange Act;

B.      Ordering Defendants to correct the materially misleading Preliminary Proxy;

C.      Declaring that the Individual Defendants have breached their fiduciary duties to Plaintiff and the Class;

D.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 26, 2012                    **SHAMBERG, JOHNSON & BERGMAN, CHTD.**


                                            */s/ John Parisi*_____
                                            John Parisi, MO #36422
                                            2600 Grand Boulevard, Suite 550
                                            Kansas City, MO  64108
                                            Telephone (816) 474-0004
                                            Fax: 816-(816) 474-0003


                                            OF COUNSEL
                                            **FARUQI & FARUQI, LLP**
                                            Juan E. Monteverde
                                            jmonteverde@faruqilaw.com
                                            369 Lexington Avenue, 10th Floor
                                            New York, NY 10017
                                            Telephone: (212) 983-9330
                                            Facsimile: (212) 983-9331

                                            *Attorneys for Plaintiff*